UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

VICTORIA GUIDRY                                                  CIVIL ACTION

VERSUS                                                           NO. 16-15252

SOCIAL SECURITY ADMINISTRATION                                   SECTION "B" (3)

REPORT AND RECOMMENDATION

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for review of the final decision of the Commissioner denying her claim for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA"). The matter has been fully briefed on cross-motions for summary judgment and is ripe for review. For the following reasons, IT IS RECOMMENDED that plaintiff's motion for summary judgment be DENIED, the Commissioner's cross-motion be GRANTED, and plaintiff's case be DISMISSED WITH PREJUDICE.

I.    BACKGROUND

Plaintiff filed an application for DIB on March 22, 2013, alleging a disability onset date of June 19, 2012. (Adm. Rec. at 11, 120-28). Plaintiff alleged disability due to back problems, diabetes, depression, and Hepatitis C. (*Id.* at 188). In October 2014, plaintiff amended her onset date to January 1, 2013. (*Id.* at 119). Plaintiff, born on January 31, 1960, was 52 years old on the date on which she alleged disability and 54 years old at the time of the final administrative decision. (*Id.* at 122). Plaintiff has a seventh-grade education. (*Id.* at 189). Plaintiff has past work experience as a door greeter and a shrimp worker. (*Id.* at 189).

Defendant initially denied plaintiff's application on August 6, 2013. (*Id.* at 68-71). Plaintiff sought an administrative hearing (*id.* at 75-76), which defendant held on October 9, 2014. (*Id.* at 27-55). Plaintiff and a vocational expert ("VE"), Beth Drury, testified at the hearing. After, or

at, the oral hearing, plaintiff again amended her disability onset date to August 1, 2013.  (*Id.* at 11).

On February 23, 2015, the ALJ issued a decision in which she found that plaintiff has not been disabled since August 1, 2013. (*Id.* at 11-22).  In the decision, the ALJ concluded that plaintiff has the severe impairments of degenerative disc disease of the spine, osteoarthrosis of the left elbow, hip, and knee, and depression.  (*Id.* at 13).   The ALJ held that plaintiff does not have an impairment or a combination of impairments that meets or medically equals a listed impairment under the regulations.  (*Id.* at 14).  The ALJ found that plaintiff retains the residual functional capacity ("RFC") to perform light work activity as defined in 20 C.F.R. § 404.1567(b) with the following additional limitations: frequently operate left foot controls; occasionally climb, balance, stoop, crouch, kneel, and crawl; and frequently reach and perform overhead reaching with the non-dominant left upper extremity.  (*Id.* at 15).   The ALJ also concluded that due to depression and the side effects of her medication, plaintiff is limited to simple, routine, repetitive tasks in low-stress jobs involving only occasional changes in the work setting.  (*Id.*). The ALJ concluded that plaintiff can perform her past relevant work as a door greeter and shrimp worker.  (*Id.* at 20). The ALJ thus denied plaintiff DIB.  (*Id.* at 21-22).

Plaintiff asked the Appeals Council ("AC") to review the ALJ's conclusion that she is not disabled.  (*Id.* at 7).  On August 4, 2016, the Appeals Council denied plaintiff's request.  (*Id.* at 1-6). Plaintiff then timely filed this civil action.

## II.     STANDARD OF REVIEW

The function of a district court on judicial review is limited to determining whether there is "substantial evidence" in the record, as a whole, to support the final decision of the

Commissioner as trier of fact, and whether the Commissioner applied the appropriate legal standards to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir.1999); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir.1995); *Carriere v. Sullivan*, 944 F.2d 243, 245 (5th Cir.1991). If the Commissioner's findings are supported by substantial evidence, this Court must affirm them. *Martinez*, 64 F.3d at 173.

"Substantial evidence" is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401(1971); *Masterson v. Barnhart,* 309 F.3d 267, 272 (5th Cir. 2002). It is more than a scintilla, but may be less than a preponderance. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir.1993). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the Commissioner's decision. *See Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2002).

A district court may not try the issues *de novo*, re-weigh the evidence, or substitute its own judgment for that of the Commissioner. *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir.1995); *Spellman*, 1 F.3d at 360. The Commissioner is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible. *See Arkansas v. Oklahoma*, 503 U.S. 91, 112-13 (1992). Conflicts in the evidence are for the Commissioner to resolve, not the courts. *Carey,* 230 F.3d at 135. Any of the Commissioner's findings of fact that are supported by substantial evidence are conclusive. *Ripley*, 67 F.3d at 555. Despite this Court's limited function on review, the Court must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence exists to support it. *Anthony v. Sullivan*, 954 F.2d 289, 295

(5th Cir.1992); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir.1990).

## III.    ENTITLEMENT TO BENEFITS UNDER THE ACT

To be considered disabled and eligible for disability benefits under the Act, plaintiff must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant is considered disabled only if his physical or mental impairment is so severe that he is unable to do not only his previous work, but can not, considering his age, education and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which he lives, whether a specific job vacancy exists, or whether he would be hired if he applied for work.  42 U.S.C. § 1382(a)(3)(B).   The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability.  20 C.F.R. §§ 404.1501 - 404.1599 & Appendices, §§ 416.901t-416.988 (1995).   The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity.   *Id*. §§ 404.1520, 416.920; *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir.1994).

In *Shave v. Apfel*, 238 F.3d 592 (5th Cir. 2001), the Fifth Circuit restated the five-step procedure to make a disability determination under the Social Security Act:

> The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. First, the claimant must not be presently working at

4

> any substantial gainful activity. Second, the claimant must have an impairment or combination of impairments that are severe. An impairment or combination of impairments is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." Third, the claimant's impairment must meet or equal an impairment listed in the appendix to the regulations. Fourth, the impairment must prevent the claimant from returning to his past relevant work. Fifth, the impairment must prevent the claimant from doing any relevant work, considering the claimant's residual functional capacity, age, education and past work experience. At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant acquits this responsibility, at step five the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. If the Commissioner meets this burden, the claimant must then prove he in fact cannot perform the alternate work.

*Shave*, 238 F.3d at 594 (quoting *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir.1999)). If the ALJ determines that a plaintiff is not disabled under Step V of the five-part test, the ALJ must establish that the claimant has a "residual functional capacity," given the claimant's age, education, and past work experience, to perform other work available in the national economy. *Leggett v. Chater*, 67 F.3d 558, 564 n.11 (5th Cir. 1995). Step V also requires the Commissioner to use the medical-vocational guidelines to make her disability determination. *Id.*

The four elements of proof weighed to determine whether evidence of disability is substantial are: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir.1995). "The Commissioner, rather than the courts, must resolve conflicts in the evidence." *Id*.

**IV.  ISSUES ON APPEAL**

There are three issues on appeal:

(1)  Whether the ALJ erred when she failed to accord the proper weight to plaintiff's treating and examining physicians.

      (2)      Whether substantial evidence supports the ALJ's RFC assessment.

      (3)      Whether the ALJ erred when she failed to apply Medical-Vocational Guideline 201.09.

## V.    ANALYSIS

### 1.    Whether the ALJ erred when she failed to accord the proper weight to plaintiff's treating and examining physicians.

Plaintiff argues that the ALJ failed to accord the proper weight to the opinion of her treating physician given that all of the physicians who examined and treated her "agree that her mental and physical impairments burden her with limitations more significant than those assessed by the ALJ in her" RFC determination. [Doc. #19-1 at p. 11]. She contends that all of these physicians have opined that she is unable to reach for objects for a sustained period of time, unable to perform even simple repetitive work for longer than short periods, and becomes more unreliable over extended periods. She maintains that no doctor who treated her after her onset date has opined that she can return to her previous employment or even work at that level of exertion. She argues that the ALJ erred when she relied primarily on the opinion of Dr. Charles Lee, the non-examining, non-treating medical expert.

The opinion of the treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability. *See Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence." *Martinez*, 64 F.3d at 176 (citing 20 C.F.R. § 404.1527(d)(2)).

6

Even though the opinion and diagnosis of a treating physician should be afforded considerable weight in determining disability, "the ALJ has sole responsibility for determining a claimant's disability status." *Paul v. Shalala*, 29 F.3d 208, 211 (5th Cir. 1994). "'[T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion.'" *Id.* The treating physician's opinions are not conclusive. *See Brown*, 192 F.3d at 500. The opinions may be assigned little or no weight when good cause is shown. *Greenspan*, 38 F.3d at 237. Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence. *See Brown*, 192 F.3d at 500; *Greenspan*, 38 F.3d at 237; *Paul*, 29 F.3d at 211.

SSA Regulations provide that the SSA "will always give good reasons in [its] notice of determination or decision for the weight [it gives the claimant's] treating source's opinion" and lists factors an ALJ must consider to assess the weight to be given to the opinion of a treating physician when the ALJ determines that it is not entitled to "controlling weight." 20 C.F.R. § 404.1527(d)(2). Specifically, the regulation requires consideration of:

> (1) the physician's length of treatment of the claimant,
> (2) the physician's frequency of examination,
> (3) the nature and extent of the treatment relationship,
> (4) the support of the physician's opinion afforded by the medical evidence of record,
> (5) the consistency of the opinion with the record as a whole; and
> (6) the specialization of the treating physician.

*Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000).

In her RFC determination, the ALJ limited plaintiff to light work requiring only simple, routine, repetitive tasks in a low stress job. (*Id.* at 15). She also limited plaintiff to frequently

7

reaching with non-dominant left upper extremity. (*Id.* at 15). In forming the RFC assessment, the ALJ considered opinion evidence from numerous physicians. (*Id.* at 19-20).

The Court firsts dispels one of plaintiff's core arguments, that the ALJ relied solely on the opinion of Charles Lee, M.D. While it is true that Lee did not derive his opinion from an in-person examination of plaintiff, he reviewed the medical records through the end of July 2013 and thus had the benefit of reviewing the majority of the medical evidence in the record. (*Id.* at 62-63). Moreover, Lee's opinion is *not* the sole basis for the ALJ's decision as suggested by plaintiff. (*Id.* at 14-20). As noted above and as outlined below, the ALJ relied on the examination records of numerous physicians who treated plaintiff personally and explained the reasoning for the weight given to the various treating, examining, and other medical opinions that supported her RFC assessment. Indeed, the ALJ's recitation of Lee's findings only constitute one paragraph in her pages-long analysis.

For example, in July 2013, consultative examiner, Guy Lefort, M.D., performed a comprehensive examination of plaintiff. (*Id.* at 19, 305-09). In the summary portion of his report, he stated that plaintiff had a negative straight leg raise test, and she exhibited full range of motion in her lumbar spine and joints of the lower extremities. (*Id.* at 309). He also noted some decrease in the range of motion in plaintiff's neck but full range of motion elsewhere. (*Id.*). Concerning plaintiff's ability to reach, Lefort noted that she had trouble reaching for objects and would be unable to reach for objects for an extended period of time. (*Id.*). Consequently, the ALJ included a reaching limitation in the RFC for light work including a limitation to only frequently reaching with her non-dominant left upper extremity. (*Id.* at 15). The ALJ gave great weight to Lefort's opinion as it is consistent with the other medical evidence in the record as evidenced below. (*Id.*

at 19).

Plaintiff argues that given the great weight afforded to Lefort's opinion, the ALJ should have included a limitation on *sustained* reaching in the RFC assessment. However, such a limitation is unsupported by the evidence as a whole. The record reflects that plaintiff maintained full strength and range of motion with mild carpal tunnel syndrome. (*Id.* at 319). A physical examination in July 2014 revealed normal findings in the right shoulder, elbow, wrist, and knee, and normal findings in the left shoulder, elbow, and wrist. (*Id.* at 384). When only certain findings of a doctor's opinion are supported by the record, it is appropriate for an ALJ not to afford weight to the unsupported part of the opinion. *See Kirksey v. Shalala*, 21 F.3d 1109, 1994 WL 171704, at *3 (5th Cir. 1994) (unpublished). Thus, the ALJ properly declined to give great weight to Lefort's opinion regarding limited reaching on a sustained basis.

In any event, the Court finds that any potential error – had the ALJ committed one – would be harmless as plaintiff's past work as a door greeter only requires frequent reaching rather than reaching on a sustained basis. *See* DOT #324.677-014. Additionally, the positions that the ALJ found that plaintiff can perform at step four only require frequent reaching and not constant reaching (*i.e.*, her past relevant work). (*Id.* at 21). *See* DOT #237.367-018, 211.462-010, 372.667-010. Thus, even if the ALJ had included the limitation of no sustained reaching, any error was harmless as the jobs at step four only require frequent reaching. An error is harmless if it does not "affect the substantial rights of a party," *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012), or when it "is inconceivable that the ALJ would have reached a different conclusion" absent the error. *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003). Here, the ALJ would have had no reason to reach a different conclusion given his finding that plaintiff can perform her past relevant work

9

that requires only frequent reaching.

In addition, in July 2013, consultative examiner William Fowler, Ph.D., conducted a psychological examination of plaintiff. (*Id.* at 19, 312-15). He opined that plaintiff remains able to carry out simple, repetitive work for short blocks of time with pace and performance negatively affected over extended periods. (*Id.* at 314-15). Plaintiff cites to Fowler's opinion in a possible attempt to show that she requires more non-exertional limitations than those included in the RFC. (*Id.* at 15). The ALJ gave this opinion partial weight, finding that, on the whole, the evidence does not support a decrease in pace. (*Id.* at 19). For instance, the ALJ recited competing treatment notes stating that plaintiff exhibited normal orientation, logical thought processes, normal remote and recent memory, and normal intellectual functioning. (*Id.* at 18, 329, 348). She also considered the consultative examination findings by Lefort, which demonstrate that plaintiff was fully oriented; maintained the ability to follow simple and complex commands; and had intact memory. (*Id.* at 19, 306). The ALJ mulled these inconsistent findings and concluded that limitations supported by the evidence as a whole in the RFC assessment satisfy the SSA.

Plaintiff cites to a May 18, 2014 "to whom it may concern" letter written by her treating physician, Therryll Johnson, M.D., which states, "Patient is unable to work because of chronic severe lower back pain and depression." (*Id.* at 351). That is the entirety of the letter – one conclusory sentence. The Court gives short shrift to this argument. The Commissioner's regulations explain that such opinions by physicians are not medical opinions, and as such, have no "special significance" in the ALJ's determination. 20 C.F.R. § 404.1527(d)(1). An opinion that a claimant is "unable to work" or is "disabled" is an opinion on a legal issue that is reserved for the Commissioner and is never entitled to "controlling weight." 20 C.F.R. § 404.1527(d). The ALJ

10

properly gave no weight to this opinion, especially given its terse, conclusory nature that even fails to reveal whether Johnson even saw her when he penned the letter. (*Id.* at 20).

Plaintiff's main argument is that the ALJ failed to properly weigh the opinions outlined above. (*Id.* at 19-20). Specifically, plaintiff claims that the opinion of Johnson, a treating physician – and who provided the record to which this Court was cited with no more than a one-sentence legal conclusion – is entitled to controlling weight. To support her contention, plaintiff cites *Newton* and the Commissioner's regulations. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) ("the opinion of the treating physician who is familiar with the claimant's impairments, treatments and responses should be accorded great weight in determining disability."), 20 C.F.R. § 404.1527(c)(2). Plaintiff argues that, if the ALJ does not give controlling weight to the treating physician, he must perform a detailed analysis under the criteria set forth in 20 C.F.R. § 404.1527(d). However, the Fifth Circuit has clarified that an ALJ need not conduct an analysis of the opinion of a treating physician when the record contains first-hand opinions from other treating or examining physicians. In *Qualls*, the Fifth Circuit clarified that the *Newton* court limited its holding to opinions in which the ALJ rejects the *sole* relevant medical opinion before it. *Qualls v. Astrue*, 339 Fed. Appx. 461, 466, 2009 WL 2391402 (5th Cir. 2009). Here, the ALJ relied on the medically-supported opinions of examining physicians Lefort and Fowler which were inconsistent with Johnson's conclusion. (Adm. Rec. at 19). Accordingly, the ALJ had no duty to perform an analysis of Johnson's opinion using the *Newton* factors because reliable medical evidence from treating and examining physicians were also before her. *Qualls*, 339 Fed. Appx. at 466. In any event, the Court concludes that the ALJ gave sufficient reasons, considering the examining physician, consistency, and supportability factors when giving weight to the various medical

11

opinions (*Id.* at 19-20). That is all that is required. *See Mayes v. Astrue*, No. 08-10306, 2008 WL 5069750, at *3 (5th Cir. 2008) (finding that an ALJ must consider the factors before declining to give any weight to the opinions of a treating doctor).

The Court finds that this claim of error lacks merit and is a mere invitation for it to reweigh the evidence, which is something that it can not do. "It is, of course, for the [Commissioner] to decide what weight to accord various medical reports." *Johnson v. Bowen*, 864 F.2d 340, 347 (5th Cir. 1988). "[Plaintiff's] argument comes down to the weight the ALJ places on [the physician's] report – and it is the ALJ's task, not ours, to weigh evidence." *Garcia v. Colvin*, 622 Fed. Appx., 408-409 (5th Cir. 2015). This Court must affirm the Commissioner's decision if it is supported by substantial evidence "even if the evidence [also] preponderates against the [Commissioner's] decision." *Johnson v. Bowen*, 864 F.3d 340, 343 (5th Cir. 1988). Here, while the Court recognizes that plaintiff presents evidence to support her claims, the Court can not escape the fact that substantial evidence also supports the conclusions of the ALJ, and for this reason, it is affirmed.

### 2. Whether substantial evidence supports the ALJ's RFC assessment.

Plaintiff contends that the ALJ failed to incorporate the entirety of her symptomatology into the RFC assessment. She argues that the ALJ violated the requirements of Social Security Ruling ("SSR") 96-8 by failing to consider all of the relevant evidence to determine the RFC. The Court does not find merit in plaintiff's argument.

The Court's review of the record and the opinion of the ALJ reveal that physical examinations of plaintiff consistently revealed normal to mild findings. For example, in January 2013, a physical examination revealed no tenderness on palpation of the mid-thoracic spine and

12

normal extremities. (Adm. Rec. at 17, 287). In August 2013, plaintiff had a normal physical exam. (*Id.* at 17, 329). Later in the month, she exhibited only a slight decrease in range of motion in her neck, but her sensation, deep tendon reflexes, and gait remained normal. (*Id.* at 17, 324-5). As late as October 2013, plaintiff's gait, range of motion, and muscle strength were all normal. (*Id.* at 17, 319). The evidence reveals that her gait and station remained normal throughout the record. (*Id.* at 17, 308, 319, 356-57).

The mental examinations of plaintiff also reveal normal to mild findings. Plaintiff exhibited normal orientation, logical thought processes, full orientation, normal remote and recent memory, and normal intellectual functioning. (*Id.* at 18, 313-15, 329, 348-49). In her examination notes, consultative examiner Fowler noted that plaintiff can carry out simple, repetitive work, which the ALJ properly incorporated into the RFC. (*Id.* at 18, 315).

The ALJ also considered the routine and conservative treatment that her physicians have been performing on plaintiff. (*Id.* at 19). The record contains approximately 300 pages of medical evidence, including physical and mental examinations. (*Id.* at 240-518). The ALJ noted that plaintiff's treating and examining physicians have not recommended surgery such as a spinal fusion or hip joint replacement. (*Id.* at 19). Similarly, all of plaintiff's mental examinations were outpatient rather than inpatient. (*Id.* at 19). The Fifth Circuit has noted that conservative treatment is not suggestive of disability. *Carey v. Apfel*, 230 F.3d 131, 139 (5th Cir. 2000).

The ALJ has the sole responsibility for evaluating a claimant's RFC based on the record as a whole. *Villa v. Sullivan*, 895 F.2d 1019, 1023-1024 (5th Cir. 1990); 20 C.F.R. § 404.1546. The ALJ considers all relevant medical and other evidence to make the RFC determination. 20 C.F.R. § 404.1545(a)(3); SSR 96-5, 1996 WL 374183, at *5. It is axiomatic that the ALJ is not required

to incorporate limitations in the RFC that she did not find to be supported in the record. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988). The normal to mild findings recited above do not support any greater limitations than those for which the ALJ accounted in the RFC for light work with some limitations. (*Id.* at 15). The ALJ properly considered all the medical evidence in making her RFC assessment.

It bears reminding that plaintiff has the burden of proof to demonstrate what limitations should be included in the RFC assessment. *See Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). Here, plaintiff fails to cite to any longitudinal objective medical evidence to demonstrate that she is more limited than the ALJ stated in the RFC assessment. The record as a whole, as recited by the ALJ, supports her RFC assessment.

It appears that plaintiff contends that her subjective complaints of pain and symptoms should outweigh the objective medical evidence of record. However, as noted above, the objective medical evidence does not support any greater limitations than those set forth in the RFC assessment. (*Id.* at 15). It is well-established in this circuit that subjective evidence need not take precedence over objective evidence. *See Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990). Plaintiff is of the belief that, as a consequence of the ALJ finding that her degenerative disc disease, osteoarthritis, and depression were severe impairments, the ALJ should have included limitations for the entirety of plaintiff's symptomology. However, a claimant's statements about pain and other symptoms are not conclusive evidence of disability, but they must be accompanied by medical signs and findings of a medical impairments that can reasonably be expected to produce the pain or other symptoms alleged and that would lead to the conclusion that an individual is disabled. 40 U.S.C. 423(d)(5)(A). Moreover, as a matter of law, the simple fact that working may

14

cause a claimant pain or discomfort does not mandate a finding of disability. *See Hames v. Heckler*, 707 F.2d 162, 166 (5th Cir. 1983). Here, the ALJ incorporated the limitations that were supported by the objective medical evidence rather than plaintiff's subjective complaints. (*Id.* at 15-20).

As to plaintiff's mental impairments, the ALJ limited her to work that is simple, routine, with repetitive tasks in a low stress environment, and that involve only occasional changes in the work setting. (*Id.* at 15). Such restrictions to rare public interaction, low stress, and simple, one-to-two-step instructions reflect that the ALJ reasonably incorporated plaintiff's moderate concentration, persistence, and pace limitations. *See Bordelon v. Astrue*, 281 Fed. Appx. 418, 423 (5th Cir. 2008). Substantial evidence supports the ALJ's RFC determination here.

### 3. Whether the ALJ erred when she failed to apply Medical-Vocational Guideline 201.09.

Plaintiff devotes two terse arguments to this issue in her memorandum. Essentially, plaintiff contends that application of this guideline renders her disabled because she is 50 years of age (*i.e.*, closely approaching advanced age).

The Medical-Vocational Guidelines ("Grid Rules") were promulgated to improve both the uniformity and efficiency of an ALJ's determination at step five of the sequential analysis. *Heckler v. Campbell*, 461 U.S. 458, 461 (1983) (emphasis added). The Grid Rules only apply when the ALJ reaches step five and finds that a claimant is unable to perform his or her past relevant work. *Wren v. Sullivan*, 925 F.2d 123, 129 (5th Cir. 1991). Here, the ALJ decided this case at step four, finding that plaintiff can perform her past relevant work as a door greeter or shrimp worker. (*Id.* at 20). Accordingly, the step-five Grid Rules simply do not apply.

Plaintiff argues that she is limited to sedentary work and, as a consequence, is disabled under Grid Rule 201.09. 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 201.09. However, as exhibited

15

above, the ALJ's determination that plaintiff can perform light work with some limitations is supported by substantial evidence. Thus, the Grid Rule that plaintiff suggests is not applicable.

As this Court outlined above, there is no merit to plaintiff's claim of error as substantial evidence supports the ALJ's RFC assessment for a restricted range of light work. As a result, the ALJ properly decided this case at step four, and made a proper alternate step five finding that plaintiff is not disabled. (*Id.* at 21).

## VI. CONCLUSION

Accordingly,

**IT IS RECOMMENDED** that plaintiff's Motion for Summary Judgment be DENIED, the Commissioner's cross-motion be GRANTED, and plaintiff's case be DISMISSED WITH PREJUDICE.

### NOTICE OF RIGHT TO OBJECT

Objections must be: (1) specific, (2) in writing, and (3) served within fourteen (14) days after being served with a copy of this report. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 1(a), 6(b) and 72(b). A party's failure to object bars that party from: (1) entitlement to *de novo* review by a district judge; and (2) appellate review of the un-objected-to factual findings and legal conclusions accepted by the district court, except upon grounds of plain error. *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this 15th day of August, 2017.

_Daniel E. Knowles, III_

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**